# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| STEPHANIE LYNN OTHERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-20-TLS |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Stephanie Othersen seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on August 26, 2016, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because she was not disabled under the relevant provisions of the Social Security Act. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## BACKGROUND

The Plaintiff was born on May 7, 1975. (R. at 222, ECF No. 9.) The Plaintiff has previously worked as a data entry clerk, general clerk, and warehouse worker. (R. at 352.) In the present case, the Plaintiff claims to have become disabled on February 1, 2002, due to multiple

mental impairments, including post traumatic stress disorder (PTSD), depression, anxiety, and personality disorder. (Pl. Opening Br. 2, ECF No. 15.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had engaged in SGA in 2011. (R. at 22.) Thus, the ALJ held that the Plaintiff could not be found to be disabled prior to January 2012. (*Id.*) However, after that date, the Plaintiff did satisfy the step one inquiry. (*Id.*) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments of PTSD, depression, anxiety, and personality disorder are severe impairments because they significantly limit her ability to perform basic work activities. (*Id.*) Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in

combination with other impairments, rises to this level, she earns a presumption of disability "without considering her age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1, (R. at 22), and that the Plaintiff has the RFC to perform light work, as defined by § 404.1567(b),

> However, she has non-exertional limitations to the extent she cannot understand, remember, or carry out detailed or complex job instructions. She is capable of performing simple repetitive tasks on a sustained basis (meaning eight hours a day/five days a week or on an equivalent work schedule) that do not require her to work at a fast pace or at a regimented pace of production. To minimize distractions, it is best the claimant only occasionally works in close proximity to others. As to other social interactions, the claimant should not be exposed to intense or critical supervision or have to interact with the general public on more than an occasional basis or interact with the general public, co-workers, and supervisors on more than a casual, superficial basis.

(R. at 25.)

At the final step of the evaluation, the ALJ determined that the Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (R. at 34.) The ALJ determined that the Plaintiff can work as a packager, sorter, and inspector. (*Id.*)

The Plaintiff subsequently sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the

3

Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz*, 559 F.3d at 739. A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must

explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff presents numerous faults with the ALJ's decision.

### A. The Plaintiff's Treating Physician, Dr. Tallon

The Plaintiff argues that the ALJ erred by improperly discounting the opinion of Dr. Tallon, M.D., contained within two separate letters, dated July and August 2013, both stating that the Plaintiff was disabled due to severe PTSD. (R. at 403, 473.) In his decision, the ALJ acknowledged the Plaintiff's long-term treatment relationship with Dr. Tallon, but ultimately gave the doctor's letters little weight because the ALJ concluded that: (1) the first letter was provided in response to the Plaintiff's request for a letter; (2) the Plaintiff's mood, affect, memory and judgment were within normal limits on the day that she asked for the letter, (R. at 28–29); (3) the letters contain conclusory opinions that the Plaintiff is totally disabled; (4) the letters appear to be based on the Plaintiff's self-reports; and (4) Dr. Tallon is not a qualified mental healthcare provider and is not the Plaintiff's primary mental healthcare provider. (R. at 29.)

5

First, the Plaintiff argues that because she has the burden of submitting the requisite evidence to establish her impairments, she should not be penalized for asking her physician for the necessary medical evidence. The Seventh Circuit has previously addressed this issue, holding:

> [T]he fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence. *See Moss v. Astrue,* 555 F.3d 556, 560–61 (7th Cir. 2009) (per curiam); *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998). Quite the contrary, in fact. The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. 20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3). How else can she carry this burden other than by asking her doctor to weigh in? Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain language exactly what it is that the claimant's condition prevents her from doing? Indeed the regulations endorse this focused inquiry.

*Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). Consequently, in this case, it was improper for the ALJ to determine that the Plaintiff's request for the letter "detract[s] from the reliability of" the letter. (R. at 28.) The Plaintiff was within her rights to "ask the doctor to lay out in plain language" her condition(s) and symptoms. *Punzio*, 603 F.3d at 712. For the ALJ to have assigned negative weight to the letter due to the Plaintiff's request is error. However, as the Commissioner points out, this was not the sole basis for the ALJ's discount of Dr. Tallon's opinions.

Accordingly, the Court next turns to the ALJ's second reason for discounting Dr. Tallon's opinion—that the Plaintiff's mood, affect, memory, and judgment were within normal limits on the day that she asked for the letter on July 11, 2013. In support, the ALJ cited to Dr. Tallon's contemporaneous medical record, (R. at 404), which the ALJ cites as inconsistent with Dr. Tallon's letter, created at the same time. Upon review of Dr. Tallon's contemporaneous medical record, which is a list of various potential diagnoses and symptoms, the Court is not convinced that there is an inconsistency. The lower right hand corner of the medical record

6

details how to read the record, explaining that a checked box next to each symptom means "normal," a circle means "positive," and a slash means "negative." (*Id.*) Next to "affect and mood," Dr. Tallon drew a circle, indicating positive, and not a checkmark, indicating normal. (*Id.*) Dr. Tallon also has noted that the quality of the Plaintiff's illness is "worse." (*Id.*). Thus, the Court finds the ALJ did not build a logical bridge to support his finding of inconsistency between this medical record and Dr. Tallon's letter.

The Court also notes that the Commissioner argues that the state agency psychological consultant who reviewed the Plaintiff's records gave Dr. Tallon's opinion only "partial weight" and found that "it is not entirely consistent with" the medical record and the Plaintiff's daily living activities. (R. at 126.) The Commissioner thus argues that the ALJ appropriately gave little weight to the letters. However, this is an argument by the Commissioner and not the ALJ. "Though the ALJ mentioned" the state agency psychological consultants' opinions and accorded them great weight later in his decision, the ALJ "never linked these [opinions] with an assessment of" Dr. Tallon's opinion. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has "made clear that what matters are the reasons articulated *by the ALJ*." *Id.* (citation omitted) (emphasis in original). As in *Jelinek*, "[a]lthough the ALJ cited the opinion of both [state agency psychological consultants], he did not use either opinion to support his decision to reject Dr. [Tallon's] opinion." *Id.*

The ALJ also discounted Dr. Tallon's letters because Dr. Tallon is not a psychiatrist or mental healthcare provider. Moreover, the ALJ determined that Dr. Tallon was a not a member of the Plaintiff's mental healthcare team. (R. at 29.) First, the parties contest whether Dr. Tallon was a member of the Plaintiff's healthcare team. The Plaintiff points out that though she was receiving mental health counselling from a mental health professional, she did not begin to see a

7

psychiatrist until two years later. Accordingly, Dr. Tallon was prescribing the Plaintiff her necessary psychiatric medication, (R. at 523–26), and adjusting the doses. Although the ALJ may give greater weight to mental healthcare professionals, the ALJ did not explain why here, for the two year period during which the Plaintiff did not see a psychiatrist, Dr. Tallon's opinions regarding the effectiveness of psychiatric medications are to be discounted. While it is true that the opinion of a specialist about medical issues related to his or her area of specialty are entitled to greater weight than the opinion of a source who is not a specialist, 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5), this does not mean that the opinion a medical source who is not a specialist is to be automatically discounted. Thus, while Dr. Tallon's lack of specialty in mental healthcare is a factor for the ALJ to weigh, it alone is insufficient as the sole basis to discount the doctor's opinion.

Because the ALJ incorrectly evaluated Dr. Tallon's letters, the Court must remand on this point.

**B.      The Vocational Expert**

The Plaintiff also argues that the ALJ failed to incorporate all of his findings regarding the Plaintiff's mental limitations in the hypothetical posed to the Vocational Expert (VE).

The ALJ gave the two state agency psychological consultants the "greatest weight with respect to other opinions of the record;" particularly the opinion of consultant William Shipley, Ph.D. (R. at 33.) Both of the agency consultants filled out the Mental Residual Functional Capacity (MRFC) forms used by agency consultants to report the Plaintiff's limitations. In one section of the MRFC form, the agency consultants must select (or check a box for) the type of

limitation accorded to a plaintiff for various issues. In this case, the agency consultants indicated "moderate" impairments regarding the Plaintiff's abilities for the following:

> The ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions or respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(R. at 113–14; 125.)

"In this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citation omitted); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). Here, the ALJ's hypothetical to the VE was as follows:

> [P]lease assume an individual of M[s] Othersen's age, education, work history who has no exertional limitations, but with the following mental limitations. The individual cannot understand, remember, or carry out detailed or complex job instructions, but can perform simple, repetitive tasks on a sustained basis meaning eight hours a day, five days a week or an equivalent work schedule. Only occasional work in close proximity to others to minimize distractions. No fast paced work or work regarding a regimented pace of production. Only casual superficial interactions with others, and that would include supervisors, co-workers, and the general public. As far as frequency of contact with the general public, let's reduce that to just occasional interaction with the general public. Finally, no exposure to intense or critical supervision.

9

(R. at 96–97.)

The Plaintiff argues that the ALJ did not include limitations regarding the Plaintiff's attendance and punctuality, in addition to the other mental limitations expressed by the state agency consultants, in the ALJ's hypothetical to the VE.

Upon review of the Seventh Circuit decision in *Varga*, the Court finds that remand in this case is necessary. In *Varga*, as in this case, the ALJ gave great weight to the state agency psychological consultant. However, the *Varga* court held that the ALJ failed to account for the consultant's opinion in the MRFC form in which the consultant selected "moderate" impairments in the areas of concentration, persistence, and pace. As the Court of Appeals explained, "[a]mong the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace."*Varga*, 794 F.3d at 813–14. "Thus, we would expect an adequate hypothetical to include the limitations identified by [the state agency psychological consultant]." *Id.* The Seventh Circuit held that selected/checked boxes in the MRFC form are limitations identified by the consultant, and thus, the ALJ must consider and analyze them:

> This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt,* we explicitly rejected the argument that "we should be unconcerned . . . with the failure of the ALJ to mention the six areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately 'translated' these limitations into a mental RFC that the ALJ could reasonably adopt." 758 F.3d at 858.

* * *

> Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored.

*Id.* at 816. Therefore, here, the ALJ's hypothetical question to the VE should have taken into account any moderate difficulties in mental functions indicated in the MRFC form by the consultants, unless the ALJ included reasoning to explain why the ALJ does not give weight to this portion of the consultants' opinions.

It is true, as the Commissioner contends, that in *Varga*, the consultant's narrative RFC, a space located in another section of the MRFC form (or an attached section) where the consultant can expound on his/her selections, was lost; whereas in this case, the narrative portion is available to the ALJ to review. The Commissioner also points out that the *Varga* court held that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Id.* The Commissioner thus argues that the ALJ appropriately relied upon the narrative statements from the consultants, including the fact that one consultant, Dr. Kennedy, noted that the Plaintiff was able to drop off her children to school on time.

However, this is a post-hoc rationalization, and the Court must limit its review to the rationale offered by the ALJ. *SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943). Here, the ALJ did not offer any rationalization to demonstrate that he gave greater weight to the consultants' narratives over the selected boxes. In other words, the ALJ did not articulate whether the narrative RFC "adequately encapsulates and translates those worksheet" checked boxes. *Varga*, 794 F.3d at 816. On remand, the ALJ must articulate whether he found the narratives to be more persuasive and, if so, why, or otherwise include the appropriate limitations in the hypothetical posed to the VE.

Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on March 15, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT